**Electronically Filed
Intermediate Court of Appeals
30246
20-DEC-2010
10:29 AM**

NO. 30246

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee, v.
RANDY LOPAKA HANOHANO, Defendant-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 09-1-0082)


MEMORANDUM OPINION
(By: Foley, Presiding J., Leonard and Ginoza, JJ.)

Defendant-Appellant Randy Lopaka Hanohano (Hanohano) appeals from the Judgment of Conviction and Sentence filed on November 16, 2009 in the Circuit Court of the First Circuit (circuit court).[1] A jury found Hanohano guilty of two counts of Terroristic Threatening in the First Degree, in violation of Hawaii Revised Statutes (HRS) § 707-716(1)(e) (Supp. 2009), and one count of Burglary in the First Degree, in violation of HRS § 708-810(1)(c) (1993).

On appeal, Hanohano contends the circuit court erred by denying his post-verdict Motion for Judgment of Acquittal or for New Trial (Motion) as to his conviction for Burglary in the First Degree. Hanohano challenges Finding of Fact (FOF) 2 and

---

[1] The Honorable Karen S. S. Ahn presided.

Conclusions of Law (COLs) 4 and 6 in the circuit court's Order Denying Defendant's Motion for Judgment of Acquittal and For New Trial, filed on January 13, 2010. Hanohano argues that when the evidence is viewed in the light most favorable to the State of Hawaiʻi (State) and in full recognition of the province of the trier of fact, the evidence is insufficient to support a prima facie case of Burglary in the First Degree.

## I.  BACKGROUND

On January 21, 2009, the State charged Hanohano with one count of Burglary in the First Degree and two counts of Terroristic Threatening in the First Degree. Hanohano's jury trial commenced on August 27, 2009.

Mary Hanohano (Mary) testified that she had lived in the same house on Nanakuli Avenue in Nanakuli, Oahu, for all of her life and was living there on Christmas of 2008 with her boyfriend, Ernest Auwae (Auwae). Hanohano is her son; he had been living at her house in 2008 until she asked him to leave.

Mary stated that on December 25, 2008 she went to dinner at her daughter's house up the road. She came home with Auwae and was surprised to see Hanohano in the house. Hanohano made a verbal remark to her, and she told him to leave. Hanohano was in bedroom #3, which was his bedroom, packing his bag when she asked if she could check his bag. When she went to look in his bag, Hanohano pushed her away from the bag and into the hallway. She lost her balance and fell down on her butt. According to Mary, Auwae came around the corner and tried to get Hanohano "off of her"; however, Hanohano was not actually physically holding her down.

Mary testified that Auwae had physically contacted Hanohano to get Hanohano "off of [her]," and Hanohano became angry. Hanohano and Auwae exchanged words, and she went to the bedroom she shared with Auwae. Hanohano left and returned with a sledgehammer. She and Auwae were in the bedroom, and Hanohano

began hammering at the bedroom door. Auwae was holding the door shut when Hanohano was hammering it. Hanohano made a hole in the door large enough for him to come through, but he then stopped hammering and left the house. She called the police after Hanohano left.

After reviewing her statement made to the police on December 25, 2008, she agreed that in her statement she said that while Hanohano was hammering on the door, he stated he was going to kill her; however, she now does not recall him saying that.

Auwae testified that he currently lives with Mary at her house on Nanakuli Avenue and was living there in December 2008. Hanohano was living there too, but Mary had asked Hanohano several times to leave.

Auwae stated that when he and Mary came home from her daughter's house on December 25, 2008, he was surprised to see Hanohano outside the house because Mary had told Hanohano not to come to the house anymore. Auwae noticed that the door to the house was open, even though he had closed and locked it before he and Mary left. They all went inside together. Auwae went straight to the bathroom, and he could hear Hanohano and Mary "grumbling" in the hallway. When Auwae came out of the bathroom, he saw Mary on her knees and Hanohano holding down Mary by her neck and shoulders with one hand. Auwaee heard Hanohano ask Mary if "she like lickens for Christmas." Hanohano was yelling at Mary. Auwae then punched Hanohano in the head because he thought Hanohano was hitting Mary, but Hanohano never hit her. After Auwae hit Hanohano, Hanohano told Auwae that he was going to hit Auwae in the head. Hanohano was mad because Auwae had hit him, and Hanohano's voice was raised.

Auwae testified that he took Mary into their bedroom, shut the door, and told Hanohano "enough already." Hanohano began banging on the door with a sledgehammer. He was trying to hold the door closed. Hanohano hit the door several times. Mary was screaming and upset. The door broke and there was a big hole in it.

After Mary and Auwae's testimonies, Hanohano made an oral motion for judgment of acquittal as to all charges. The circuit court denied the motion, and Hanohano then testified at trial. After Hanohano's testimony, he renewed his motion for judgment of acquittal, which the circuit court again denied. That same day, the jury returned a guilty verdict on all charges.

On September 8, 2009, Hanohano filed his Motion. On September 22, 2009, the State filed a memorandum in opposition to the Motion. On October 12, 2009, the circuit court held a hearing on the Motion. At the hearing, Hanohano's counsel clarified that the Motion pertained only to the Burglary in the First Degree charge and not the Terroristic Threatening charges. Hanohano argued that he did not enter into the house with any criminal intent and it was only in the house that something happened. Hanohano's counsel argued that "[t]he point is the requisite state of mind, specific intent to burglarize, was certainly lacking, because [Hanohano] was in the home when he --." The circuit court stated that "I believe you can commit burglary even though you enter without intent to commit a crime therein, but you form that intent while you're on the property." Hanohano's counsel argued that there was no intent to commit an offense because the fight was over a bag or the fact that Auwae had punched Hanohano in the face. The circuit court denied the Motion and entered the judgment on November 16, 2009.

On December 16, 2009, Hanohano filed a Notice of Appeal. On January 13, 2010, the circuit court filed an Order Denying Defendant's Motion for Judgment of Acquittal and for New Trial (Order), which stated in relevant part:

FINDINGS OF FACT

1.    Witnesses for the [State] testified at trial herein that, on or about December 25, 2008, in the City and County of Honolulu, [Hanohano] arrived at a residence situated at . . . Nanakuli Avenue. [Mary], [Hanohano]'s Mother, testified that she and [Auwae], her boyfriend, resided at that address, and that she had the authority to determine who resided or was welcome therein. She testified that [Hanohano] did not reside at that address at the time.

4

2.    Trial testimony was that Mary Hanohano initially permitted [Hanohano] into the residence, but then ordered him to leave.  [Hanohano] did not leave the residence.  He was putting some items into a bag when he physically pushed [Mary].  Soon thereafter, he obtained a sledgehammer and pursued within the residence [Mary] and Auwae, who locked themselves in a room in the house, at which time [Hanohano] used the sledgehammer to try to break the room door.

3.    [Hanohano] elected to testify before the jury.

4.    After due deliberation, a jury convicted [Hanohano] as charged of Burglary in the First Degree and two counts of Terroristic Threatening in the First Degree, each count for which named a different victim.

5.    Any finding of fact which is a conclusion of law shall be so deemed.  Any conclusion of law which is a finding of fact shall be so deemed.

<u>CONCLUSIONS OF LAW</u>

1.    A person commits Burglary in the First Degree if he intentionally remains unlawfully, to wit, without license or invitation, in a building, with intent to commit therein a crime against a person or against property rights, and recklessly disregards a risk that the building is the dwelling of another, and the building is such a dwelling.

2.    A person commits Terroristic Threatening in the First Degree if he recklessly threatened, by word or conduct, to cause bodily injury to another person with the use of a dangerous instrument, in reckless disregard of terrorizing that person.  A dangerous instrument is any material which in the manner it is used is known to be capable of causing death.

3.    The standard to be applied by the trial court in ruling upon a motion for judgment of acquittal is whether, upon the evidence viewed in the light most favorable to the prosecution and giving full recognition to the province of the jury, a reasonable mind could fairly conclude guilty [sic] beyond a reasonable doubt.  <u>State v. Alston</u>, 75 Haw. 517, 528 (1994).  The jury's province includes determining the credibility of witnesses and the weight of the evidence and drawing reasonable inferences from the credible evidence.

4.    Viewing the evidence in the light most favorable to the prosecution, the Court must conclude that a reasonable juror could have believed that . . . Nanakuli Avenue was [Mary's] residence which she shared only with [Auwau] and that she ordered [Hanohano], her adult son, to leave her residence.  Similarly, a reasonable juror could have reasonably inferred that [Hanohano] knew or recklessly disregarded the risk that . . . Nanakuli Avenue was his mother's residence and that [Mary] did not give [Hanohano] license or invitation to remain in her residence when she ordered him to leave and/or when he then pushed her and/or pursued her, yelling, armed with a sledgehammer, then damaged her room door.  A reasonable juror could have believed that [Hanohano] remained unlawfully within the residence with the intent, which can be formed in a

5

relatively brief period of time, to push [Mary] down, to pursue her with a sledgehammer, or to damage the room door.

     5.    Further, a reasonable juror could have believed that, when [Hanohano], yelling, damaged the door by striking it numerous times with a sledgehammer, [Hanohano] recklessly threatened by his words or conduct to cause at least physical pain to [Mary] and [Auwae] with the use of a dangerous instrument, and, in doing so, [Hanohano] recklessly disregarded the risk of terrorizing [Mary] and [Auwae]. Under the circumstances, and considering the relevant attributes of [Mary] and [Auwae], a reasonable juror could have found that these threats were objectively capable of causing fear of bodily injury in a reasonable person at whom the threat was directed and that the threat on its face and under the circumstances was so clear, unconditional, immediate, and specific as to the person threatened, that the threat communicated a seriousness of purpose and an imminent likelihood of being carried out. A reasonable juror also could have concluded that [Hanohano] was aware that the sledgehammer, as he was using it, was capable of causing someone's death via, for instance, a blow to the head.

     6.    A new trial may be granted if required in the interest of justice. Rule 33, Hawaii Rules of Penal Procedure. The granting or denial of a new trial is within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion. State v. Hicks, 113 [Hawaiʻi] 60, 69 (2006). The Court concludes, based upon the totality of the trial proceedings, that a new trial is not required in the interest of justice.

## II.  STANDARD OF REVIEW

When reviewing the grant or denial of a post-verdict motion for a judgment of acquittal,

> we employ the same standard that a trial court applies to such a motion, namely, whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the trier of fact, the evidence is sufficient to support a prima facie case so that a reasonable mind might fairly conclude guilt beyond a reasonable doubt. Sufficient evidence to support a prima facie case requires substantial evidence as to every material element of the offense charged. Substantial evidence as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion. Under such a review, we give full play to the right of the fact finder to determine credibility, weigh the evidence, and draw justifiable inferences of fact.

State v. Timoteo, 87 Hawaiʻi 108, 112-13, 952 P.2d 865, 869-70 (1997) (quoting State v. Jhun, 83 Hawaiʻi 472, 481, 927 P.2d 1355, 1364 (1996)).

## III. DISCUSSION

### A. The circuit court erred by denying Hanohano's Motion.

Even when the evidence is taken in the light most favorable to the State, the State failed to prove a prima facie case of Burglary in the First Degree. HRS § 708-810 provides:

> §708-810 **Burglary in the first degree.** (1) A person commits the offense of burglary in the first degree if the person intentionally enters or <u>remains unlawfully</u> in a building, with intent to commit therein a crime against a person or against property rights, and:
>
> (a) The person is armed with a dangerous instrument in the course of committing the offense; or
>
> (b) The person intentionally, knowingly, or recklessly inflicts or attempts to inflict bodily injury on anyone in the course of committing the offense; or
>
> (c) The person recklessly disregards a risk that the building is the dwelling of another, and the building is such a dwelling.
>
> (2) An act occurs "in the course of committing the offense" if it occurs in effecting entry or while in the building or in immediate flight therefrom.
>
> (3) Burglary in the first degree is a class B felony.

(Emphasis added.)

Hanohano was charged with violating HRS § 708-810(1)(c). Therefore, in order to convict Hanahano, the State was required to prove that Hanohano (1) intentionally remained unlawfully in Mary's house, (2) with the intent to commit therein a crime against a person or against property, and (3) Hanohano recklessly disregarded the risk that Mary's house was a dwelling of another. There is no dispute that Hanohano remained at Mary's house after she asked him to leave. There is also no dispute that Hanohano recklessly disregarded the risk that Mary's house was a dwelling of another, i.e. his mother, because he lived in the same house with Mary. Thus, the only dispute is whether the State demonstrated that Hanohano had an intent to commit a crime

against a person or against property when he remained unlawfully in Mary's house.

In State v. Mahoe, 89 Hawai'i 284, 972 P.2d 287 (1998), Mahoe appealed his conviction for Burglary in the First Degree. Id. at 285, 972 P.2d at 288. The Hawai'i Supreme Court quoted the prosecuting attorney's closing argument as follows:

> There are four things that the State has to prove. Each of them the State has to prove beyond a reasonable doubt for the Defendant, Mr. Mahoe, to be guilty of this crime. . . . [One element is] that he entered or remained in that building, Kristy's house, with an intent to commit a crime therein against either a person or property rights. And it says enter or remain with that intent. It's one or the other. He either entered the house with the intent or while he was in the house he remained in the house, he formed the intent. The State only has to prove one or the other of those two elements that he either entered or he remained with the intent to commit a crime against a person or property.

Id. at 286, 972 P.2d at 289.

The court stated that "[t]he prosecuting attorney's statement that the element of intent may be proven if it is shown that 'while [the perpetrator] was in the house he remained in the house, he formed the intent' is an incorrect statement of the law." Id. at 290, 972 P.2d at 293. The court further stated:

> The Hawai'i Penal Code's definition of burglary was adopted from the Model Penal Code.
>
> . . . .
>
> Pursuant to the commentary to the Model Penal Code, the elements of the offense of burglary are established at the moment that an unlawful entry or "remaining" with the requisite criminal intent is made. It would be an unwarranted extension of Hawai'i's modern burglary statute to expand the offense of burglary to include situations in which the criminal intent develops after an unlawful entry or remaining has occurred.

Id. at 288, 972 P.2d at 291 (italics in original; footnote omitted).

Thus, the State was required to prove that at the moment Hanohano was asked to leave the house, Hanohano intended to commit a crime against a person or property right. Development of an intent to commit a crime after Hanohano remained unlawfully at the house is insufficient to convict

8

Hanohano of Burglary in the First Degree.  The State points to a passage in Mahoe that states:

> We have not previously addressed the meaning of "unlawfully remain" in the context of the burglary statute. We interpret this language, as have other courts that have addressed similar language, as being inserted to cover situations in which the initial entry was lawful, but the presence later becomes unlawful and the perpetrator remains with the intent to commit a crime.

89 Hawai'i at 289, 972 P.2d at 292.  Thus, the State essentially argues that Hanohano's intent to commit a crime can arise at any time that he remained unlawfully in the house.  However, the State's citation to Mahoe is incomplete and taken out of context. A careful reading of Mahoe indicates that this is the same interpretation of the law that was rejected.

There was no evidence that when Hanohano was asked to leave the house, he intended to threaten his mother or Auwae or break down a door with a sledgehammer.  Hanohano's mother testified that Hanohano pushed her in reaction to her request that she look into his bag.  There was no evidence that Hanohano intended to push his mother after she asked him to leave the house.

After Auwae hit Hanohano, Hanohano became angry and retrieved a sledgehammer.  Although Hanohano did break a bedroom door with the sledgehammer, there was no evidence that he intended to do so when he was first asked to leave the house. Rather, the evidence suggests that Hanohano's intent to break down the door arose after he was hit by Auwae.  The evidence does not support that a reasonable mind might conclude beyond a reasonable doubt that when Hanohano was first asked to leave the house, he intended to get into an argument with his mother and push her, get hit by Auwae, and then retrieve a sledgehammer and use it to break down a bedroom door.  The circuit court erred by denying Hanohano's motion to acquit him of the charge of Burglary in the First Degree.

## IV.   CONCLUSION

The Judgment of Conviction and Sentence filed on November 16, 2009 in the Circuit Court of the First Circuit is affirmed in part and vacated in part.  Hanohano's convictions for Counts II and III, Terroristic Threatening in the First Degree, are affirmed.  Hanohano's conviction for Burglary in the First Degree is reversed, and the case is remanded for resentencing.

DATED:   Honolulu, Hawai̇i, December 20, 2010.

On the briefs:

Chester M. Kanai
for Defendant-Appellant.

Stephen K. Tsushima,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge

10